**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| FLEETWOOD SERVICES, LLC, ROBERT L. FLEETWOOD and PAMELA A. FLEETWOOD,<br><br>          Plaintiffs,<br><br>v.<br><br>COMPLETE BUSINESS SOLUTIONS GROUP, INC. d/b/a PAR FUNDING, *et al.*,<br><br>          Defendants. | Civil Action No. 18-cv-00268 (JS) |

**DEFENDANT COMPLETE BUSINESS SOLUTIONS GROUP, INC. D/B/A PAR FUNDING'S MEMORANDUM OF LAW IN SUPPORT OF ITS** <u>**MOTION FOR JUDGMENT ON THE PLEADINGS**</u>

Brett A. Berman
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3222
Telephone: (215) 299-2842
Fax: (215) 299-2150
bberman@foxrothschild.com

Jonathan D. Christman
10 Sentry Parkway
Suite 200, P.O. Box 3001
Blue Bell, PA 19422
Telephone: (610) 397-6500
Fax: (610) 397-0450
jchristman@foxrothschild.com

*Attorneys for Defendant Complete Business Solutions Group, Inc. d/b/a Par Funding*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

I.     INTRODUCTION .................................................................................................... 1

II.    FACTUAL ALLEGATIONS DEMONSTRATING THE INDISPUTABLE
APPLICABILITY OF TEXAS FINANCE CODE § 306.103. ........................................ 2

III.   STANDARD OF REVIEW ..................................................................................... 4

IV.   ARGUMENT ........................................................................................................... 5

      A.    The Second Amended Complaint Should Be Dismissed Based Upon The
            Plain And Unambiguous Language Of The Factoring Agreement........................ 5

           1.    Texas Law Enforces Unambiguous Contractual Language
                  As Written. ................................................................................. 5

           2.    The Texas Finance Code Conclusively Establishes The Factoring
                  Agreement Is An Account Purchase Transaction. ..................................... 6

           3.    Case Law Supports The Plain And Unambiguous Interpretation Of The
                  Factoring Agreement. ............................................................... 8

      B.    The Attending Circumstances Pleaded In The Second Amended Complaint
            Confirm The Parties' Characterization Of The Factoring Agreement
            As A Lawful Account Purchase Transaction, And Thus Further Support
            Dismissal. ......................................................................................... 12

      C.    Additionally, The Second Amended Complaint Should Be Dismissed Because
            The Factoring Agreement Lacks The Material Elements Of A Loan. ................... 13

V.    CONCLUSION ....................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Vargas*,
　No. 07-1916, 2007 WL 3024569 (E.D. Pa. Oct. 17, 2007) .......................................4

*Anglo–Dutch Petroleum Int'l, Inc. v. Haskell*,
　193 S.W.3d 87 (Tex. App. 2006).......................................13

*Asmussen v. Wilson*,
　775 S.W.2d 676 (Tex. App. 1989).......................................12

*In re: Assist-Med., Inc.*,
　No. 16-31624, 2017 WL 5900538 (Bankr. S.D. Tex. Nov. 27, 2017) ..................8, 9

*Bernie's Custom Coach of Tex. v. Small Bus. Admin.*,
　987 F.2d 1195 (5th Cir. 1993) .......................................10

*Billman v. Corbett*,
　No. 10-2996, 2011 WL 605814 (E.D. Pa. Feb. 15, 2011) .......................................4

*Buck v. Hampton Twp. Sch. Dist.*,
　452 F.3d 256 (3d Cir. 2006).......................................4

*Burlington Resources Oil & Gas Co. LP v. Texas Crude Energy, LLC*,
　573 S.W.3d 198 (Tex. 2019).......................................5

*Calpine Producer Servs., L.P. v. Wiser Oil Co.*,
　169 S.W.3d 783 (Tex. App. 2005).......................................6

*Chrysler Ins. Co. v. Greenspoint Dodge of Houston, Inc.*,
　297 S.W.3d 248 (Tex. 2009).......................................6

*City of Pinehurst v. Spooner Addition Water Co.*,
　432 S.W.2d 515 (Tex. 1968).......................................11

*Crow v. Home Sav. Ass'n of Dall. Cnty.*,
　522 S.W.2d 457 (Tex.1975).......................................13

*Dewhurst v. Gulf Marine Inst. of Tech.*,
　55 S.W.3d 91 (Tex. App. 2001).......................................12

*DiCarlo v. St. Mary Hosp.*,
　530 F.3d 255 (3d Cir. 2008).......................................4

*Epernay Community Ass'n, Inc. v. Shaar*,
  349 S.W.3d 738 (Tex. App. 2011)........................................................................6

*Express Working Capital, LLC v. One World Cuisine Group, LLC*,
  No. 15-3792, 2018 WL 4214349 (N.D. Tex. Aug. 16, 2018)..........................9, 11

*Express Working Capital, LLC v. Starving Students, Inc.*,
  28 F. Supp. 3d 660 (N.D. Tex. 2014) ..........................................9, 10, 11, 13

*F.F.P. Operating Partners, L.P. v. Duenez*,
  237 S.W.3d 680 (Tex. 2007)...............................................................................7

*FSS v. Phase I. Electronics of West Texas, Inc.*,
  998 S.W.2d 674 (Tex. App. 1999).....................................................................12

*Gilbert Texas Constr., L.P. v. Underwriters at Lloyd's London*,
  327 S.W.3d 118 (Tex. 2010)................................................................................6

*Goode v. Davis*,
  135 S.W.2d 285 (Tex. Civ. App. 1939) .............................................................12

*Gupta v. Eastern Idaho Tumor Inst., Inc.*,
  140 S.W.3d 747 (Tex. App. 2004)......................................................................12

*Interstate Contracting Corp. v. City of Dallas, Tex.*,
  407 F.3d 708 (5th Cir. 2005) ...............................................................................5

*Korrody v. Miller*,
  126 S.W.3d 224 (Tex. App. 2003).......................................................................9

*Lovick v. Ritemoney Ltd.*,
  378 F.3d 433 (5th Cir. 2004) .............................................................................10

*Marzo Club, LLC v. Columbia Lakes Homeowners Ass'n*,
  325 S.W.3d 791 (Tex. App. 2010).......................................................................5

*Matter of Worldwide Trucks, Inc.*,
  948 F.2d 976 (5th Cir. 1991) .............................................................................10

*Pearcy Marine, Inc. v. Acadian Offshore Servs., Inc.*,
  832 F.Supp. 192 (S.D. Tex. 1993) ...............................................................10, 13

*Revell v. Port Auth.*,
  598 F.3d 128 (3d Cir. 2010)................................................................................4

*Ross v. Union Carbide Corp.*,
   296 S.W.3d 206 (Tex. App. 2009)....................................................................12

*Scranton Times, L.P. v. Wilkes-Barre Pub. Co.*,
   No. 08-2135, 2009 WL 3100963 (M.D. Pa. 2009) ...............................................4

*Sears, Roebuck & Co. v. AIG Annuity Ins. Co.*,
   270 S.W.3d 632 (Tex. App. 2008).................................................................5, 6

*Shelly v. Johns-Manville Corp.*,
   798 F.2d 93 (3d Cir. 1986)...............................................................................4

*Signal Peak Enters. of Tex., Inc. v. Bettina Investments, Inc.*,
   138 S.W.3d 915 (Tex. App. 2004)..................................................................12

*Stanley Works v. Wichita Falls Ind. Sch. Dist.*,
   366 S.W.3d 816 (Tex. App. 2012)................................................................7, 8

*Sun Oil Co. v. Madeley*,
   626 S.W.2d 726 (Tex. 1981)............................................................................5

*T.O. Stanley Boot Co. v. Bank of El Paso*,
   847 S.W.2d 218 (Tex. 1993)...........................................................................13

*Tex. Commerce Bank–Arlington v. Goldring*,
   665 S.W.2d 103 (Tex. 1984)...........................................................................10

*Tittizer v. Union Gas Corp.*,
   171 S.W.3d 857 (Tex. App. 2005)....................................................................5

*Young v. Valt.X Holdings, Inc.*,
   336 S.W.3d 258 (Tex. Appl. 2010)....................................................................6

**Statutes**

18 U.S.C. § 1962...............................................................................................3

Tex. Bus. & Com. Code Ann. § 9.109(e) ......................................................*passim*

Tex. Fin. Code § 306.001(1)...........................................................................6, 7

Tex. Fin. Code § 306.103(a).................................................................................7

Tex. Fin. Code § 306.103(b)...........................................................................*passim*

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

**Rules**

Fed. R. Civ. P. 12(b)(6)..................................................................4

Fed. R. Civ. 12(c)..........................................................................4

Fed. R. Civ. P. 12(h)(2)..................................................................4

**Other Authorities**

A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1367 (1990)..........................................................................................4

Eugene F. Cowell III, *Texas Article 9 Amendments Provide "True Sale" Safe Harbor*, 115 Banking L.J. 699, 701 (1998) ............................................9

Defendant Complete Business Solutions Group, Inc. d/b/a Par Funding ("Defendant" or "CBSG"), by and through its undersigned counsel, submits this Memorandum of Law in support of its Motion for Judgment on the Pleadings.

## I.    __INTRODUCTION__

"If it's not a loan, we – we lose."[1] So admits Plaintiffs' Counsel, and they are right. As a threshold matter, under Texas law, Plaintiffs' claims are barred in their entireties based upon Texas Finance Code § 306.103 and the plain and unambiguous language of the parties' Factoring Agreement. The parties' contract expressly states it is an account purchase transaction and the Texas Legislature has decided, in a statute directly on point, that such an agreement conclusively establishes that said contract is a purchase (and thus not a loan). This statute provides a safe haven for the type of contract involved here, and the application of this statutory provision is a threshold, dispositive issue in this case that warrants early resolution in this proposed class action lawsuit.

In addition to Texas contract construction of the express contractual language, the attending circumstances of the Factoring Agreement and its lacking of several necessary elements of a loan confirm that CBSG did not provide Plaintiffs with a money loan, but instead similar merchant cash funding that Plaintiffs had previously received from multiple other entities. Plaintiffs' claims are built on the same wrong premise—that the parties' contract violated Texas usury laws—but that premise not only violates the presumption under Texas contract law, it directly violates the parties' clear and unmistakable characterization of the Factoring Agreement. The Factoring Agreement was a lawful account purchase agreement (not a usurious loan), and Plaintiffs' post hoc, litigation crafted interpretation is entitled no weight when the express language of the completed contract is unambiguous. As such, the Second Amended Complaint should be dismissed with prejudice.

---

[1]    *See* ECF No. 39, Hr'g Tr. (11/2/18), at 13:18 (quoting Plaintiffs' Counsel).

## II. FACTUAL ALLEGATIONS DEMONSTRATING THE INDISPUTABLE APPLICABILITY OF TEXAS FINANCE CODE § 306.103.

Plaintiff Fleetwood Services, LLC ("Fleetwood") and its principals Robert L. Fleetwood ("R. Fleetwood") and Pamela A. Fleetwood ("P. Fleetwood") (collectively, "Plaintiffs") run a golf course construction business out of Dallas, Texas. *See* Plaintiffs' Second Amended Complaint ("SAC"), ECF No. 67, at ¶ 42. As part of that business, Plaintiffs allege Fleetwood is not immediately paid for its services and there is a 30-60 day delay between when it generates a receivable and is paid. *Id.* at ¶ 36. Plaintiffs claim Fleetwood did not qualify for traditional financing. *Id.* at ¶ 67.

CBSG operates in the merchant cash advance industry. *See* SAC, at ¶ 35; *see also* Defendant's Answer to SAC ("Answer"), ECF No. 71, at ¶ 35.

On January 4, 2017, Fleetwood and CBSG entered into a contract. *See* SAC, at ¶¶ 41, 51; *see also* Answer, at ¶¶ 41, 51; Factoring Agreement, ECF No. 71-1. The Factoring Agreement (or "Agreement") expressly defines itself as a "PURCHASE AND SALE OF FUTURE RECEIPTS WITH SELLER RECOURSE" and further characterizes the transaction as an account purchase:

> Seller/Merchant hereby sells, assigns and transfers to CBSG (making CBSG the absolute owner) in consideration of the funds provided ("Purchase Price") . . . all of Seller/Merchant's future receipts, accounts, contract rights and other obligations arising from or relating to the payment of monies from Seller/Merchant's customers and/or other third party payers . . . until such time as the "Receipts Purchased Amount (RPA)" has been delivered by Seller/Merchant to CBSG.

*See* Factoring Agreement, at p. 1. In addition to the foregoing provisions, the Factoring Agreement explicitly states the parties agreed the transaction was "not intended to be, nor shall it be construed as a loan . . ." *See id.* at ¶ 1.10. The Factoring Agreement also specifically states the parties agreed "IN NO EVENT SHALL THE AGGREGATE OF THE AMOUNTS RECEIVED BE DEEMED AS INTEREST . . . ." *See id.* at ¶ 1.10.

Under the express terms of the Agreement, CBSG bought Fleetwood invoices (or future receivables) that were due and payable at a discount. *See* SAC, at ¶¶ 46, 52, 69. More specifically, Fleetwood sold its future receivables with a face value of $547,600 ("Receipts Purchased Amount") for an upfront discounted price of $370,000 ("Purchase Price"). *See* SAC, at ¶ 68; *see also* Answer, at ¶ 68. As part of the Factoring Agreement, Fleetwood also entered into a security agreement and its principals executed personal guarantees. *See* SAC, at ¶¶ 49, 54; *see also* Factoring Agreement, ECF No. 71-1. Pursuant to the terms of the Factoring Agreement, Fleetwood was to remit to CBSG future receivables through daily debits representing 25% of Fleetwood future receipts. *See* SAC, at ¶¶ 53, 54; *see also* Factoring Agreement, ECF No. 71-1. The Factoring Agreement includes a reconciliation provision permitting Fleetwood to seek an adjustment of the amounts taken out of its account based on its cash flow or lack thereof. *See* SAC, at ¶ 65; *see also* Factoring Agreement, ECF No. 71-1. Six months after execution, on July 5, 2017, Fleetwood paid CBSG the Receipts Purchase Amount in full. *See* SAC, at ¶ 67; *see also* Answer, at ¶ 67.

As Plaintiffs concede, the Factoring Agreement with CBSG was not Plaintiffs' first foray into the cash advance industry. *See* SAC, at ¶¶ 37, 42, 45. Instead, Plaintiffs admit to stacking at least six other merchant cash advance agreements before pursuing funding from CBSG. *Id*. Notwithstanding, after the contract was completed, Plaintiffs filed a lawsuit against CBSG in Texas, which was subsequently transferred to this Court based upon enforcement of the plain meaning of a valid forum-selection clause in the Factoring Agreement. In its recently-filed Second Amended Complaint, Fleetwood asserts the following claims against CBSG: (i) Texas Usury Statute (Count I); (ii) Attorney's Fees (Count II); (iii) Fraud, (Count III); (iv) Violation of 18 U.S.C. § 1962(c); and (v) Conspiracy Under 18 U.S.C. § 1962(A) (Count V). CBSG now timely moves for judgment on the pleadings based upon Texas Finance Code § 306.103(b).

## III. <u>STANDARD OF REVIEW</u>

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. 12(c). Moreover, Rule 12(h)(2) allows the defense of failure to state a claim upon which relief can be granted to be made by motion under Rule 12(c). Fed. R. Civ. P. 12(h)(2). The standard of review applied to a motion filed under Rule 12(c) is identical to the standard used under Rule 12(b)(6). *See Billman v. Corbett,* No. 10-2996, 2011 WL 605814, at *1 (E.D. Pa. Feb. 15, 2011) (Sánchez, J.) (citing *Revell v. Port Auth*., 598 F.3d 128, 134 (3d Cir. 2010)).

"A Rule 12(c) motion is designed to provide a means for disposing of cases when the material facts are not in dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings and any facts of which the court will take judicial notice." *Scranton Times, L.P. v. Wilkes-Barre Pub. Co*., No. 08-2135, 2009 WL 3100963, at *2 (M.D. Pa. 2009) (citing A. Wright and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1367 (1990); *see also Allstate Ins. Co. v. Vargas*, No. 07-1916, 2007 WL 3024569, at *1 (E.D. Pa. Oct. 17, 2007) (Sánchez, J.) (citing *Shelly v. Johns-Manville Corp*., 798 F.2d 93, 97 n. 4 (3d Cir. 1986)). In deciding a motion under Rule 12(c), the court "will accept the complaint's well-pleaded allegations as true, and construe the complaint in the light most favorable to the nonmoving party, but will not accept unsupported conclusory statements." *DiCarlo v. St. Mary Hosp*., 530 F.3d 255, 262–63 (3d Cir. 2008). In addition to the pleadings, the Court may take into account documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case. *Buck v. Hampton Twp. Sch. Dist*., 452 F.3d 256, 260 (3d Cir. 2006). Applying this standard, the Court should dismiss the SAC with prejudice, and end this litigation.

IV. **ARGUMENT**

A. **The Second Amended Complaint Should Be Dismissed Based Upon The Plain And Unambiguous Language Of The Factoring Agreement.**

1. **Texas Law[2] Enforces Unambiguous Contractual Language As Written.**

Under Texas contract law, this Court's task or primary objective is to "ascertain the true intentions of the parties **as expressed in the writing itself**." *Burlington Resources Oil & Gas Co. LP v. Texas Crude Energy, LLC*, 573 S.W.3d 198, 203 (Tex. 2019) (quotations and citation omitted; emphasis added); *see also Marzo Club, LLC v. Columbia Lakes Homeowners Ass'n*, 325 S.W.3d 791, 798 (Tex. App. 2010). "This analysis begins with the contract's express language." *Burlington Resources*, 573 S.W.3d at 203. Contract terms are given "their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense," *id.* (quotations and citation omitted), and "[i]f the contract terms are unambiguous, the court looks only to the language of the contract to ascertain the parties' intent." *Sears, Roebuck & Co. v. AIG Annuity Ins. Co.*, 270 S.W.3d 632, 634-35 (Tex. App. 2008). Thus, Texas courts "enforce an unambiguous document **as written**." *Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 860 (Tex. App. 2005) (citing *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1981)) (emphasis added); *see also Interstate Contracting Corp. v. City of Dallas, Tex.*, 407 F.3d 708, 712 (5th Cir. 2005). Here, the Court need go no further than the Factoring Agreement to determine the parties' intent because the Agreement plainly stages the intent to be a purchase and sale of future receipts and not a loan. *See* Factoring Agreement, ECF No. 71-1, at p. 1 & § 1.10.

---

[2] For purposes of this Motion, CBSG applies Texas law consistent with this Court's March 29, 2019 Order and April 10, 2019 Memorandum. *See* ECF. Nos. 32-33. In doing so, CBSG does not concede and expressly preserves its argument the Factoring Agreement should be interpreted under Pennsylvania law as expressly agreed by the parties and set forth in the Agreement. *See* Factoring Agreement, ECF No. 71-1, at § 1.10 (stating "MERCHANT ACKNOWLEDGES THAT PENNSYLVANIA LAW APPLIES TO THE WRITTEN AGREEMENT"). Under Pennsylvania law, Plaintiffs' claims likewise fail as a matter of law.

"If a contract as written can be given a clear and definite legal meaning, then it is not ambiguous as a matter of law." *Gilbert Texas Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 133 (Tex. 2010) (citations omitted).[3] "Ambiguity does not arise simply because the parties offer conflicting interpretations." *Epernay Community Ass'n, Inc. v. Shaar*, 349 S.W.3d 738, 742 (Tex. App. 2011). "A contract is ambiguous only if the language used is reasonably susceptible to more than one meaning." *Sears*, 270 S.W.3d at 635.

Applying the general rules of contract construction under Texas law, this Court should enforce the unambiguous and express written language of the Factoring Agreement – not the post-Agreement, litigation-crafted interpretation proffered by Plaintiffs in their shapeless and freewheeling complaint that seeks to unwind and rewrite the parties' unambiguous (and completed) contract. Indeed, this Court "should consider that the 'intent of the parties must be taken from the agreement itself, not from the parties' present interpretation, and the agreement must be enforced as written." *Calpine Producer Servs., L.P. v. Wiser Oil Co.*, 169 S.W.3d 783, 787 (Tex. App. 2005) (citation omitted). This Court must not "change the contract merely because it or one of the parties comes to dislike its provisions or thinks that something else is needed." *Calpine*, 169 S.W.3d at 787. As discussed further below, the plain and unambiguous language of the express, written terms of the Factoring Agreement compels dismissal of Plaintiffs' lawsuit.

## 2. The Texas Finance Code Conclusively Establishes The Factoring Agreement Is An Account Purchase Transaction.

The Texas legislature granted account purchase agreements[4] statutory protection from usury attacks like those launched here by Plaintiffs. Texas Finance Code § 306.103(b) and

---

[3]     *See also Chrysler Ins. Co. v. Greenspoint Dodge of Houston, Inc.*, 297 S.W.3d 248, 252 (Tex. 2009) ("Contract language that can be given a certain or definite meaning is not ambiguous and is construed as a matter of law."); *Young v. Valt.X Holdings, Inc.*, 336 S.W.3d 258, 263 (Tex. Appl. 2010).

[4]     The Texas Finance Code defines an "account purchase transaction" as "an agreement under which a person engaged in a commercial enterprise sells accounts, instruments, documents, or chattel paper . . . at

unambiguously states "For the purposes of this chapter, the parties' characterization of an account purchase transaction as a purchase is **conclusive** that the account purchase transaction is not a transaction for the use, forbearance, or detention of money." Tex. Fin. Code § 306.103(b) (emphasis added).[5] Similarly, Section 9.109(e) of Texas Business and Commercial Code provides "For all purposes, in the absence of fraud or intentional misrepresentation, the parties' characterization of a transaction as a sale of such assets shall be **conclusive** that the transaction is a sale and is not a secured transaction and that title, legal and equitable, has passed to the party characterized as the purchaser of those assets regardless of whether the secured party has any recourse against the debtor, whether the debtor is entitled to any surplus, or any other term of the parties' agreement." Tex. Bus. & Com. Code Ann. § 9.109(e) (emphasis added). Thus, these statutory provisions unambiguously dictate that the parties' characterization of an account purchase transaction as a purchase is **conclusive** and should end any debate on this matter.

Much like Texas contract law, the primary objective of statutory construction is "to ascertain and given effect to the Legislature's intent." *Stanley Works v. Wichita Falls Ind. Sch. Dist.*, 366 S.W.3d 816, 823 (Tex. App. 2012) (citing *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 683 (Tex. 2007)). This construction begins with the statute's language and emphasizes the plain and ordinary meaning of words:

> When construing a statute, we begin with its language. We must interpret the statute according to the plain meaning of the language used, and must read the statute as a whole without giving effect to certain provisions at the expense of others. Words shall be given their ordinary meaning unless a word is connected with and used

a discount . . . ." Tex. Fin. Code § 306.001(1). The Finance Code further states that, "[a]n amount of discount in, or charged under, an account purchase transaction is not interest." Tex. Fin. Code § 306.103(a).

[5]    Pursuant to the Court's Order dated May 22, 2019, the parties submitted briefing on, *inter alia*, the issue of "Assuming Texas law governs, whether and how Texas Finance Code § 306.103 applies to Plaintiffs' allegation that the Factoring Agreement is properly characterized as a loan." *See* ECF No. 46; *see also* ECF Nos. 48-50. While substantive briefing was submitted, the Court never issued a ruling on that provision. Defendant contends that this provision bars Plaintiffs' claims in their entirety.

with reference to a particular trade, subject matter, or is used as a word of art, and in such a case, the word shall have the meaning given by experts in the particular trade, subject matter, or art. Each word, phrase, or expression must be read as if it were deliberately chosen, and we will presume that words excluded from a provision were excluded for a purpose. We may consider other matters in ascertaining legislative intent, including the objective of the law, its history, and the consequences of a particular construction.

*Stanley Works*, 366 S.W.3d at 823 (internal citations omitted).

The plain meaning of the "conclusive" directive in Texas Finance Code 306.103(b) and Tex. Bus. & Com. Code Ann. § 9.109(e) is demonstrated by various dictionary sources, all of which support the uniquely decisive nature of the parties' characterization in contracts such as the Factoring Agreement. For instance, Black's Law Dictionary defines "conclusive" as "authoritative," "decisive," or "convincing." Black's Law Dictionary (11th ed. 2019). Merriam-Webster Dictionary defines it as "of, relating to, or being a conclusion" or "putting an end to debate or question especially by reason of irrefutability."[6] In a similar fashion, the Oxford English Dictionary defines "conclusive" as "having or likely to have the effect of proving a case; decisive,"[7] while the American Heritage Dictionary defines it as "serving to put an end to doubt, question, or uncertainty" or "decisive."[8] Therefore, the parties' characterization of the Factoring Agreement as a purchase—*see* Factoring Agreement, ECF No. 71-1, at p. 1 & § 1.10—conclusively establishes that the Agreement is not a loan of money subject to Texas usury laws.

**3.      Case Law Supports The Plain And Unambiguous Interpretation Of The Factoring Agreement.**

Texas courts have consistently relied upon Texas Finance Code § 306.103(b) to reject arguments and claims that account purchase transactions are disguised usurious loans. *See In re:*

---

[6]      *See* Merriam-Webster Dictionary, *available at* https://www.merriam-webster.com.

[7]      *See* Oxford English Dictionary, *available at* https://en.oxforddictionaries.com/.

[8]      *See* American Heritage Dictionary, *available at* https://ahdictionary.com/.

*Assist-Med., Inc.*, No. 16-31624, 2017 WL 5900538, at *4 (Bankr. S.D. Tex. Nov. 27, 2017) (holding that contract expressly stating it is a sale of accounts was not a loan under Texas Finance Code provision, and therefore funder was not liable under Texas usury laws) (citing Tex. Fin. Code § 306.103(b)); *see also Express Working Capital, LLC v. One World Cuisine Group, LLC*, No. 15-3792, 2018 WL 4214349, at *7-9 (N.D. Tex. Aug. 16, 2018) (holding that parties' agreement was a factoring relationship and not a loan); *Korrody v. Miller*, 126 S.W.3d 224, 226 (Tex. App. 2003) ("[I]f the parties intend to enter an account purchase transaction (such as a factoring agreement) and characterize the transaction as such, it cannot be a loan or line of credit.") (citing Tex. Fin. Code § 306.103(b)) (affirming trial court's conclusion that the parties' agreement was a factoring relationship and not a loan).[9]

In *Express Working Capital*, the court considered whether the parties intended to enter a loan or an account purchase transaction. *See* 28 F. Supp. 3d 660, 665 (N.D. Tex. 2014). In doing so, the court examined the specific terms of the agreements in order to ascertain the parties' intent. Like the present case, the parties engaged in factoring agreements involving the sale and purchase of future receivables at a discount. *See Express Working Capital*, 28 F. Supp. 3d at 667-68; *see also Assist-Med*, 2017 WL 5900538, at *4 ("Future receivables are 'accounts' for the purpose of Section 306.103(b)."). Under the agreements at issue in *Express Working Capital*, the plaintiff purchased $1,775,500.00 worth of credit card receivables for $1,325,000.00. *See Express Working Capital*, 28 F. Supp. 3d at 663. The agreements required the defendant remit a daily percent of its receivables. *See id*. The daily transfers were automatic through a credit card processor and were to

---

[9]     Section 9.109(e) of Texas Business and Commercial Code similarly provides "a statutory safe harbor for parties seeking certainty that a transfer of accounts . . . will be treated as a sale - and not as a secured transaction - even if the transaction involves a transfer of some but not all of the risks and benefits of owning such assets." *See Express Working Capital, LLC v. Starving Students, Inc*., 28 F. Supp. 3d 660, 670 (N.D. Tex. 2014) (citing Eugene F. Cowell III, *Texas Article 9 Amendments Provide "True Sale" Safe Harbor*, 115 Banking L.J. 699, 701 (1998)).

be paid until the plaintiff received the full amount due. *See id*. The agreements expressly stated

they were not loans and that interest was not charged. *See id*. at 668. The agreement also lacked a

fixed repayment term. *See id*.[10]

The court ultimately determined the agreements for the sale and purchase of future

receivables were entitled to the protections afforded by Section 306.103 of the Texas Finance Code

and Section 9.109(e) of the Texas Business & Commercial Code. *See id*. at 670. In doing so, the

court held "[t]he language of the Agreements evidence[d] a clear intent by the parties to enter into

a series of account purchase transactions and not loans." The court rejected the very argument

proffered by Plaintiffs here—that the agreement was a sham and merely constituted the repayment

of the advance plus interest. *Id*. at 667.

The Factoring Agreement here is substantially similar to the account purchase transaction

upheld in *Express Working Capital*. From the outset, the express terms of the Agreement defy

Plaintiffs' post-hoc characterization. Bolded, capitalized and underlined at the top center of the

document, the title reads: "**FACTORING AGREEMENT**," which is further described as a

"**PURCHASE AND SALE OF FUTURE RECEIPTS WITH SELLER RECOURSE**." *See*

Factoring Agreement, ECF No. 71-1, at p. 1. The Factoring Agreement identifies Fleetwood and

CBSG, respectively, as the Seller/Merchant and Purchaser and describes the nature of the account

---

[10]     The court also focused on the "strict" interpretation of Texas usury statutes. *See Express Working Capital*, 28 F. Supp. 3d at 665 (finding "Texas usury statutes are penal in nature and are to be strictly construed") (citing *Pearcy Marine, Inc. v. Acadian Offshore Servs., Inc*., 832 F.Supp. 192, 196 (S.D. Tex. 1993); *Tex. Commerce Bank–Arlington v. Goldring*, 665 S.W.2d 103, 104 (Tex. 1984)). Such strict interpretation requires the "courts presume that the parties intended a nonusurious contract." *See id*. (citing *Bernie's Custom Coach of Tex. v. Small Bus. Admin*., 987 F.2d 1195, 1197 (5th Cir. 1993); *see also Lovick v. Ritemoney Ltd*., 378 F.3d 433, 443 (5th Cir. 2004) ("[U]nder Texas law, there is a specific presumption against a finding of usurious interest . . . Penal statutes, such as those for usury, are strictly construed."). "Any doubt as to the legislative intent to punish the activity complained of is to be resolved in favor of the defendant." *Express Working Capital*, 28 F. Supp. 3d at 665 (citing *Matter of Worldwide Trucks, Inc*., 948 F.2d 976, 979 (5th Cir. 1991).

purchase transaction in detail. *See id.* at p. 1. To remove any doubt that transaction is anything other than an account purchase, the Agreement specifically states that the Parties agree the transaction was "not intended to be, nor shall it be construed as a loan . . ." *Id.* at ¶ 1.10. The Factoring Agreement also states that the parties agreed "**IN NO EVENT SHALL THE AGGREGATE OF THE AMOUNTS RECEIVED BE DEEMED AS INTEREST . . . .**" *Id.*

The foregoing terms and conditions "'evidences a clear intent by the parties to enter into' an account purchase transaction, not a loan." *See Express Working Capital*, 2018 WL 4214349, at *9 (quoting *Express Working Capital*, 28 F. Supp. 3d at 668). As noted above, "[i]t is the general rule of the law of contracts that where an unambiguous writing has been entered into between the parties, the Courts will give effect to the intention of the parties as expressed or as is apparent in the writing." *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex. 1968). "In the usual case, the instrument alone will be deemed to express the intention of the parties for it is objective, not subjective, intent that controls." *Id.*

Based on the foregoing, Fleetwood cannot recast the Factoring Agreement as a loan subject to usury law. Texas law and fundamental contract principles require a finding that the transaction was an account purchase agreement based on its express terms. *See id.*; *see also* Tex. Fin. Code § 306.103; Tex. Bus. & Com. Code Ann. § 9.109(e). Furthermore, as this Court astutely acknowledged, to find otherwise would allow a party who willingly and knowingly enters an account purchase agreement to avoid its contractual obligations by simply reframing the agreement as a loan—which could twist and turn "almost any agreement like this into a loan." *See* ECF No. 63, Hr'g Tr. (5/22/19), at 7:4-11. Such an outcome would make the safe harbor protections provided by Section 306.103 of the Texas Financial Code and Sections 9.109 of the Texas Business & Commercial Code a nullity. For these reasons, Plaintiffs' claims fail as a matter of law based

upon the parties' express and therefore ***conclusive*** characterization of the Factoring Agreement as an account purchase transaction and not a loan.

**B.** **The Attending Circumstances Pleaded In The Second Amended Complaint Confirm The Parties' Characterization Of The Factoring Agreement As A Lawful Account Purchase Transaction, And Thus Further Support Dismissal.**

Because Texas courts presume that parties intended a non-usurious contract, *see FSS v. Phase I. Electronics of West Texas, Inc*., 998 S.W.2d 674, 677 (Tex. App. 1999); *Asmussen v. Wilson*, 775 S.W.2d 676, 677-78 (Tex. App. 1989); *Goode v. Davis*, 135 S.W.2d 285, 288 (Tex. Civ. App. 1939), this Court need not go beyond the Factoring Agreement to determine intent given the parties' express characterization of the transaction as an account purchase agreement and the specific legislative protections afforded it by Section 306.103 of the Texas Financial Code and Section 9.109 of the Texas Business & Commercial Code.[11]

Nevertheless, should the Court look outside the four corners of the Agreement, the attending circumstances pleaded in the SAC confirm that Fleetwood objectively intended to enter an account purchase agreement, not a loan. Plaintiffs' contention that Fleetwood was misled into entering the Factoring Agreement with CBSG is without merit under Plaintiffs' own narrative. Plaintiffs admit they were fully familiar with and well-versed in the merchant cash advance industry, as well as factoring agreements and their terms and conditions, long before entering into the transaction with CBSG. *See* SAC, at ¶¶ 37, 42, 45. Specifically, Plaintiffs allege Fleetwood

---

[11] Moreover, while Defendant insists that the unequivocal, objective, and conclusive construction of the Factoring Agreement is that the contract represents an account purchase transaction, Texas law further provides that when two constructions of a contract are possible, the Court "must apply the one that does not result in a violation of law." *Ross v. Union Carbide Corp.*, 296 S.W.3d 206, 218 (Tex. App. 2009); *see also Gupta v. Eastern Idaho Tumor Inst., Inc.*, 140 S.W.3d 747, 752 (Tex. App. 2004); *Signal Peak Enters. of Tex., Inc. v. Bettina Investments, Inc.*, 138 S.W.3d 915, 921 (Tex. App. 2004). "Since the parties are presumed to know to know the law and intend their contract should have legal effect, their contract will be construed in view of this presumption." *Dewhurst v. Gulf Marine Inst. of Tech.*, 55 S.W.3d 91, 97 (Tex. App. 2001). Thus, in this case, the only reasonable construction of the contract is to enforce it as a lawful account purchase transaction, not a loan.

had at least *six* pre-existing and stacked factoring agreements that required "daily payments." *See id*. This history with factoring agreements confirms the conclusion that there was no objective intent to enter a loan. Like the seller in *Express Working Capital*, Fleetwood fully performed under the Agreement by making payment to CBSG. 28 F. Supp. 3d at 669. Plaintiffs only sought to unwind and question the enforceability of the Factoring Agreement after-the-fact through this litigation, and after it had received the cash savings of the Agreement and voluntarily paid Defendant in full. Thus, the factual allegations in the SAC are consistent with and provide further support to the conclusion that the transaction between the parties was plainly intended to be an account purchase, not a loan, and that the SAC should be dismissed with prejudice.

### C. Additionally, The Second Amended Complaint Should Be Dismissed Because The Factoring Agreement Lacks The Material Elements Of A Loan.

All of Plaintiffs' claims share the same unstable foundation. Each claim is built on the false premise that the parties' underlying transaction violated Texas usury law. However, before this Court can even entertain such an argument, the Factoring Agreement must be characterized as a loan—despite the parties' express characterization of that Agreement as an account purchase transaction. "[I]t is fundamental that usury can arise only from a loan or forbearance of money." *Pearcy Marine, Inc. v. Acadian Offshore Servs., Inc.,* 832 F.Supp. 192, 196 (S.D. Tex. 1993) (citing *Crow v. Home Sav. Ass'n of Dall. Cnty*., 522 S.W.2d 457 (Tex.1975)); *see also Anglo–Dutch Petroleum Int'l, Inc. v. Haskell*, 193 S.W.3d 87, 96 (Tex. App. 2006) (finding "[i]f there is no 'loan,' then any disputed amount charged cannot be characterized as interest, and without interest, there cannot be usury."). Under Texas law, a loan contract must state (a) the amount loaned; (b) the maturity date; (c) the interest rate; and (d) the repayment terms. *See T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1993).

The Factoring Agreement cannot be recast as a loan because it is missing essential and material elements of a loan under Texas law, including interest and maturity date. As set forth above, the Factoring Agreement expressly states Fleetwood was not charged interest. *See* Factoring Agreement, ECF No. 71-1, at ¶ 1.10 (stating the parties agreed "IN NO EVENT SHALL THE AGGREGATE OF THE AMOUNTS RECEIVED BE DEEMED AS INTEREST . . . ."). Rather, the Agreement included a discounted Purchase Price. *See id*. In addition, although the Agreement included an "Estimated Final Receipt Date" of June 12, 2017, the estimate was based on Fleetwood continuing to have sufficient cash flow to remit the Daily Specified Amount. The very nature of an account purchase transaction does not allow for a precise maturity date. As further reflected by the fact CBSG did not receive payment in full from Fleetwood until July 5, 2017, which was several weeks later than the anticipated end date when the Agreement was executed. *See* SAC, at ¶¶ 53-54, 67. Therefore, Plaintiffs' claims fail because the Factoring Agreement lacks the essential elements of loan, including a maturity date and interest rate, and the SAC should be dismissed with prejudice.

## V.     <u>CONCLUSION</u>

For all of these reasons, CBSG respectfully requests this Court grant its Motion for Judgment on the Pleadings and dismiss Plaintiffs' Second Amended Complaint with prejudice.

Dated: November 22, 2019                    Respectfully submitted:

                                            **FOX ROTHSCHILD LLP**

                                            By: /s/ Brett A. Berman
                                            Brett A. Berman
                                            *One of the Attorneys for Defendant*
                                            *Complete Business Solutions Group, Inc.*
                                            *d/b/a Par Funding*

## CERTIFICATE OF SERVICE

I, Brett A. Berman, hereby certify that, on this date, I caused the foregoing document to be filed electronically with this Court, where it is available for viewing and downloading from the Court's ECF system, and that such electronic filing automatically generates a Notice of Electronic Filing constituting service of the filed document, upon the following:

Shane R. Heskin
Justin E. Proper
WHITE AND WILLIAMS LLP
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA 19103-7395
heskins@whiteandwilliams.com
properj@whiteandwilliams.com

David S. Almeida
Benesch, Friedlander, Coplan & Aronoff LLP
71 S. Wacker Drive
16th Floor
Chicago, IL 60606
DAlmeida@beneschlaw.com

*Attorneys for Plaintiffs Fleetwood Services, LLC,*
*Robert L. Fleetwood, and Pamela A. Fleetwood*

By: /s/ Brett A. Berman
Brett A. Berman

Dated: November 22, 2019